IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **MICHAEL CORI SMITH, K72924,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| **NURSE NICOLE** | ) |
| **JOHN DOE 1,** | ) Case No. 25-cv-2067-DWD |
| **JOSHUA SCHOENBECK,** | ) |
| **C/O LINGER,** | ) |
| **C/O MARCUM,** | ) |
| **C/O MILES,** | ) |
| **C/O HUGHES,** | ) |
| **NURSE JESSE,** | ) |
| **C/O CHITTY,** | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Michael Smith, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Menard Correctional Center, brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. (Doc. 1). Plaintiff alleges that the defendants have violated his rights by failing to provide treatment for his injured left ring finger. Plaintiff's Complaint (Doc. 1) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. §

1915A(b).  At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed.  *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

On October 3, 2023, Plaintiff fell and injured his left ring finger while attempting to climb into his top bunk.  The injury caused significant pain and swelling, which he reported to Defendant Nurse Nicole each time she passed his cell.  He alleges that during one of the encounters, Nicole told him she would not assist him because he called her a bad nurse.  He alleges prior to this encounter he had also given Nicole three medical request slips, and he had placed a medical request slip in the box in his cellhouse.  Despite his efforts, he was not seen until October 17, 2023, when he notified a non-party lieutenant of his plight and was sent to the medical unit. (Doc. 1 at 4).

A non-party nurse practitioner then referred him to the emergency room of an outside hospital where it was determined that he had a dislocated finger.  A nurse manually realigned his finger and attempted to place a metal splint, but John Doe (the transport officer) insisted the metal splint would not be allowed at the prison.  The nurse informed John Doe that without a metal splint, Plaintiff's finger was likely to dislocate again, but John Doe insisted, and Plaintiff's fingers were buddy-taped without any sort of splint.  Two days later Plaintiff awoke with new pain in his finger.

On October 19, 2023, Plaintiff told Defendant Marcum about his finger and his need for care, on October 20, 2023, he told Defendant Linger, and on October 21, 2023, he told Defendants Miles, Hughes, and Nurse Jesse.  None of these personnel helped.  During a shakedown on October 23, 2023, he informed Defendants Linger, Chitty, and

an unknown officer of his injury to no avail. (Doc. 1 at 6). Plaintiff alleges the three officers then sent him to segregation on false disciplinary allegations. He complains that the Adjustment Committee disregarded his medical situation on October 25, 2023.

On October 31, 2023, Plaintiff learned his finger was dislocated again at the medical unit. He was taken to the hospital, but manual realignment of his finger failed, a wooden splint was placed, and he was returned to the prison. On November 3, 2023, he finally received a metal splint, but ultimately his finger required two surgeries. Plaintiff alleges that the course of medical treatment left him disfigured with a permanent reduction in his range of motion. (Doc. 1 at 6). He alleges he grieved these issues, but his final grievance has been pending review at the Administrative Review Board since March 6, 2025.[1] Plaintiff seeks monetary compensation. (Doc. 1 at 9).

Based on the allegations in the Complaint, the Court will designate the following claims:

> **Claim 1:** Eighth Amendment deliberate indifference claim against Defendant Nurse Nicole for refusing initial care in October of 2023;
>
> **Claim 2:** Eighth Amendment deliberate indifference claim John Doe (transport officer on October 17, 2023) who refused the placement of a metal splint at the emergency room;
>
> **Claim 3:** Eighth Amendment deliberate indifference claim against Defendants Linger, Marcum, Miles, Hughes, Nurse Jesse, and C/O Chitty for refusing to assist Plaintiff from October 19-23, 2023.

---

[1] Plaintiff filed his complaint on November 13, 2025. (Doc. 1 at 9).

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. See *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

### Preliminary Dismissal

Plaintiff named Joshua Schoenbeck as a Defendant in the case caption, but he did not mention Schoenbeck by name in his factual allegations. Naming a defendant without describing their personal role in the harm alleged is insufficient to state a claim. *Black v. Lane*, 22 F.3d 1395, 1401 n. 8 (7th Cir. 1994). Therefore, any claim against Joshua Schoenbeck is dismissed as insufficiently pled.

### Analysis

**Claim 1**

An Eighth Amendment claim arising from the denial of medical care consists of an objective and a subjective component. *Berry v. Peterman*, 604 F.3d 435, 439–40 (7th Cir. 2010). A plaintiff must show that he suffered from a serious medical condition (i.e., an objective standard) and also show that each defendant responded with deliberate indifference (i.e., a subjective standard). *Id.* To satisfy the subjective component, a prisoner must demonstrate that an official knew of and disregarded an excessive risk to inmate health. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Neither medical malpractice, nor mere disagreement with a doctor's medical judgment will amount to

deliberate indifference. *Id.* Additionally, an inmate is not entitled to demand specific care, and a medical professional may choose from a range of acceptable courses of care. *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019).

Plaintiff alleges that his finger was swollen and caused him significant pain. Ultimately, Plaintiff's dislocated finger required surgical repair. The Court will assume for purposes of initial review that these are indicators of an injury that a medical provider, such as a nurse, would interpret as serious. Additionally, Plaintiff alleges he repeatedly informed Nurse Nicole of his need for care via the submission of written request slips and verbal communications. He claims that on at least one occasion, Nurse Nicole indicated she would not provide care because he previously called her a bad nurse. These facts are sufficient to support a deliberate indifference claim at this preliminary stage.

**Claim 2**

Plaintiff faults John Doe, a transport officer, for refusing to follow the course of treatment that the emergency room nurse practitioner prescribed for Plaintiff's dislocated finger. Specifically, John Doe insisted that a metal splint could not be applied because it would not be allowed at the prison. A refusal by prison staff to follow the recommendation of a medical specialist can form the basis for a deliberate indifference claim. *See e.g., Zaya v. Sood*, 836 F.3d 800, 806 (7th Cir. 2016) (finding that a jury could infer deliberate indifference from a prison doctor's failure to promptly return an inmate to a specialist for follow-up care where the specialist had clearly detailed the risks of delaying the follow-up); *but see Riley v. Waterman*, 126 F.4th 1287, 1295-96 (7th Cir. 2025) (finding that a prison nurse practitioner was not deliberately indifferent for departing

from a specialist's suggestion that an inmate receive high-top shoes for plantar fasciitis where the inmate did not exercise his ability to purchase acceptable shoes from commissary). At this preliminary juncture, Plaintiff's allegation that John Doe blatantly refused the recommended metal splint, despite the nurse practitioner's insistence that it would help to avoid reinjury, is sufficient to proceed on a theory of deliberate indifference.

**Claim 3**

Over the course of four days after Plaintiff awoke to a reinjured finger, he alleges that he asked Defendants Marcum, Linger, Miles, Hughes, Chitty, and Nurse Jesse for care and they all refused assistance. With the exception of Linger who received two requests, Plaintiff alleges he only approached each defendant once. He does not describe how his finger looked, if he was in an obvious state of distress, what he told these defendants about his pain, or if they knew the history of the injury and the suggestions from his first hospital visit. Generally, a single encounter with a prison employee is not enough to make out a claim for deliberate indifference. *See e.g.*, Owens v. Duncan, 788 F. App'x 371, 374 (7th Cir. 2019) (a single interaction with staff at sick call did not amount to deliberate indifference); Gutierrez v. Peters, 111 F.3d 1364, 1374 (7th Cir. 1997) ("isolated instances of neglect ... cannot support a finding of deliberate indifference"); *but see*, *Dobbey v. Mitchell-Lawshea*, 806 F.3d 938, 939-41 (7th Cir. 2015) (finding that an inmate who told a guard he was in severe pain and showed a guard an infected abscessed tooth could proceed on a deliberate indifference claim where the guard refused entry to the dental unit and insisted the inmate return to his cell without reporting the issue to

anyone). Although it is not infeasible that Plaintiff could provide more detail, and in doing so have a sufficient claim against some or all of the guards, at present his allegations against Marcum, Linger, Hughes, Miles, Chitty, and Nurse Jesse are too vague to proceed on a theory of deliberate indifference.

## Motion

Plaintiff filed a motion to compel the prison to provide his Trust Fund Statement. (Doc. 9). The Motion is **DENIED** as **MOOT** because the prison has provided the Trust Fund Statement (Doc. 11). However, Plaintiff still has not submitted a signed Motion for Leave to Proceed In Forma Pauperis. The Clerk of Court is **DIRECTED** to send Plaintiff an IFP template. Plaintiff must complete, sign, and return the IFP application within 30 days so that the Court can calculate his filing fee. Plaintiff does **NOT** need to file a new certification signed by prison officials. If he fails to submit his IFP application, this case may be dismissed for his failure to address the fee issue.

## Disposition

**IT IS HEREBY ORDERED THAT Claims 1 and 2** of the Complaint (Doc. 1) survive against Defendants Nurse Nicole and John Doe (October 17, 2023, hospital transport officer). By contrast, **Claim 3** is insufficient to proceed against Defendants Marcum, Linger, Hughes, Miles, Nurse Jesse, and Chitty, and Plaintiff has failed to state a claim against Defendant Schoenbeck. The Clerk of Court shall **TERMINATE** Defendants Schoenbeck, Marcum, Linger, Hughes, Miles, Nurse Jesse, and Chitty.

The Clerk of Court shall **ADD** the Warden of Menard in official capacity only to help identify John Doe. Once the Warden has entered an appearance, next steps will be

set to identify John Doe.  **<u>Plaintiff shall have 21 days to file a Notice with as much identifying information as possible about John Doe, such as a physical description</u>**.  Failure to file the notice could result in the dismissal of John Doe for failure to prosecute.

The Clerk of Court is **DIRECTED** to prepare for Defendants Nurse Nicole and Warden of Menard (official capacity for John Doe identification): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed in forma pauperis was granted. See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a change of address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute. FED. R. CIV. P. 41(b).

The Clerk of Court is **DIRECTED** to enter the standard HIPAA Order in this case because it will involve the exchange of medical records.

Plaintiff's Motion to Compel (Doc. 9) is **DENIED** as **MOOT**. **The Clerk of Court shall send Plaintiff an IFP application which he must complete, sign, and return within 30 days**. He does not need to have the prison Trust Fund Officer re-certify the form because the Court already received his Trust Fund Certification statement (Doc. 11).

**IT IS SO ORDERED.**

Dated: January 12, 2026                         /s/ *David W. Dugan*
                                                _____
                                                DAVID W. DUGAN
                                                United States District Judge

## NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear. As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.